In the next case, Jensen v. Village of Mount Pleasant. Mr. Olson. Your Honors. Opposing counsel. My name is Attorney Eric Olson and I'm here representing Rodney and Katherine Jensen in a case that involves eminent domain and a public use claim. As we pled in our complaint, this is a situation where Wisconsin passed some legislation that was meant to attract a large manufacturing facility to the state and the Village of Mount Pleasant and others acting upon that legislation attracted that large manufacturer and created a development agreement. And then, as we explained in our complaint, sent letters to the plaintiffs and others indicating that their properties would be taken for this project and then started acquiring property. The suit was brought in federal district court under 42 U.S.C. 1983 alleging a variety of claims including a public use claim. Namely, that the property that was being taken was for a private as opposed to a public use. That's the only claim that is still at issue in this suit. The district court dismissed the public use claim and all the other claims for a variety of reasons that are no longer relevant. But what is relevant is why the public use claim was dismissed. And of course, it was dismissed because of the dual requirements of Williamson County. Now, the first requirement of Williamson County is a final decision requirement. And as the district court decided, and that's set forth on pages 37 and 38 of our appendix, and the district court noticed that under Williamson County, a claim is not ripe until the government entity responsible for the taking in question has made a final decision and the owner has exhausted all available state procedures for challenging the taking. The district court went on to say on page 38 of our appendix, which is page 5 of the decision, that because the authority, the defendant in this case, the appellee, had not actually condemned the plaintiff's property and because we hadn't started any sort of a state law lawsuit, that the plaintiffs could not have pursued, much less exhausted, their available state remedies. Let's assume you're right that we've been wrong about Williamson County, okay? A couple of questions that follow from that. One, when do you think a final decision happens under the Wisconsin procedure for eminent domain? Well, I think the final decision question is explained in the Rock Energy Daniels and Abbott Laboratories cases, which we discussed in page 2 of our reply brief. Rock Energy gave an example of a fact pattern that did not meet the final decision requirement because the- I thought there might be a simpler answer to my question. Oh, I'm sorry. Okay. There's a statutory process that has to be gone through, correct? In order to- To condemn property. To condemn property, Your Honor. Yes, Your Honor. So, at what point in that process is there a, quote, final decision, in your view, for purposes of Williamson County? I think the final decision, Your Honor, quite frankly, for purposes of Williamson County, would come before what would probably be considered- sometimes before and sometimes after what would typically be considered the first step under Wisconsin law because under Wisconsin law, the first step is the creation of a relocation order, probably, or perhaps the public hearings which come before that. Okay. Isn't there a simple answer to this question? If there is, Your Honor, I'm sorry, it escapes me. I think that the proper answer- I'll ask the government as well. Okay, that's fine. Let me ask you a second question. Sure. Assuming that you're right that we are incorrect in limiting or, you know, extending Williamson County to challenges to whether the taking is for public or private use. The Jensen's property, as I understand it, is being or has been taken for a public road. Is that correct? Part of it, Your Honor, and as we explained in our brief, a small part was putatively needed for the public road, and then with a scheme to restrict the access, which we claim would not have ever happened, absent this project, the remainder was acquired. So essentially what we were saying is if it had truly been a public road purpose, only a very small portion of the property would have been needed. And if it were truly a public road purpose, it would not have been blocked off. The driveway wouldn't have been prohibited from going back in. The reason I'm concerned about this is you make some, it seems to me, quite sensible points about the scope of Williamson County. But my question, but taking property for a public road, even if it's going to benefit some people more than others, is pretty classic in public use. Yes, Your Honor. So why is this an appropriate vehicle for us to revisit those earlier precedents? I see. Yeah, thank you. As we set forth in our complaint, we claimed that the road taking was merely pretextual and that it was accompanied by a decision to landlock the remaining part of the plaintiff's property. So we called that in our complaint the landlocking scheme. Wisconsin has no prohibition against creating a landlocked situation? Well, in Wisconsin, if the plaintiffs are landlocked, they typically have what's called an uneconomic remnant, and then they may elect to either ask or try to force the condemning authority to acquire that uneconomic remnant in conjunction with the smaller taking that left it landlocked or valueless for some other reason. So Wisconsin has that whole schema, but we alleged on paragraphs 23 through 26 of our complaint that the road taking was a pretextual mechanism to, in fact, acquire the entire property, only a small portion of which would have actually been needed for the completely proper public purpose of a road. And because this comes on a motion to dismiss, then that's taken as being the fact of the matter. And the district court also recognized that in its decision. So I believe it is a proper vehicle. Of course, that, if it had gone to summary judgment or a trial, would have been vulnerable to a finding of fact. Was there a contract between the municipality and Foxcom or its representatives that required it to acquire your client's land? Yes, Your Honor, there was. That was the developer's agreement. Is that in the record at this point? It is, Your Honor. And it's discussed at page 14 of our complaint where it says, one of the terms of the developer's agreement is that the village is required to acquire the land. Paragraph 13 of our complaint gives the date that the developer's agreement. Why isn't that a final decision? I believe that would be a final decision. I think that paragraphs 12 through 16 of our complaint, where we talk about the developer's agreement being signed, the approval of financing, and the acquisition of some of the properties in the project area, and the commencement of construction that was so vigorous that the vibrations of the construction shook the homes of some of the now-settled-out plaintiffs, would show that a final decision had been made. What's the current status of the Jensen's property? As shown in the documents in our reply brief, which opposing counsel has objected to, it has been acquired. Has been? Okay. Are they off the property at this point? No, sir. They are still on the property, and that's not in the record. Okay. Anyway, my time, I'd like to reserve my remaining 17 minutes. You can respond to it. Okay. I'm sorry. Well, I guess I'm, what do you think the remedy is if a property has already been taken for a private use? I think that in this case, it's been taken legally through the documents. However, the Jensen's are still there. The road is complete, but the driveway, although legally they have no right to go in and out, it's there and they go in and out. So, I believe that the proper remedy would be an injunction. I think that. To tear up the road? No. No, no, no. To return the part that is, you know, putatively landlocked, but in fact the driveway is there and they go in and out. It's not in the record, sir, but. Okay. Not damages? No, Your Honor. Not for a public use claim, no. I don't know. I can imagine a situation where it might be a little late to issue an injunction. Actually, that's exactly why I believe in the proper circumstance, the doors of the federal courthouse should be open to claims of this type. I understand, actually, quite frankly, looking at the types of public use claims that have come before this court, that a federal court would not want to be involved in land use and zoning disputes, which can often have public use claims shoehorned into them, and that that is an entirely proper type of thing to go into federal court. But if a remedy could be fashioned for clear and egregious violations of the public use prong of the federal constitution, particularly perhaps in situations like this one where facts have been alleged, which would tend to suggest that perhaps the political processes of the state had been caught in a sort of storm of public opinion and the counter-majoritarian function of this court is necessary and proper, perhaps an exception could be carved out. If I could ask one other question with my colleague's indulgence. Apparently, we're alone among circuits in our extension of Williamson County to public use issues, correct? To the best of my research, Your Honor. And do you see any indications that in the many circuits that allow such claims under Section 1983, there's been a particularly high volume of cases to try to get federal courts to do local land use planning? I don't see that, Your Honor. I haven't looked at statistics of those courts, but I haven't seen decisions from courts saying we're overrun with these things. And even if there were, I believe that this court, in its wisdom, could carve an exception saying we are not interested in being interested in local land use decisions, but in the proper case to exercise our counter-majoritarian function and protect actually what this court, what the whole court system in the United States is supposed to do, is sometimes protect against the tyranny of the majority. And I believe Section 1983 is the mandate to do that. Thank you. Thank you, Mr. Wilson. Ms. Chintamanee. Good morning, Your Honors. May it please the Court. I want to address a couple of points that take us back to the inception of this complaint. The Eastern District of Wisconsin properly dismissed this lawsuit based on the complaint that was filed in February of 2018, and that decision should be upheld today. As my counsel stated, the Eastern District found that neither prong of Williamson was met. There was no final decision at the time the complaint was filed, and nor was there an exhaustion of remedies under state court law in Wisconsin. Now, taking you to the language of the complaint, the appellants alleged such claims as the property would be acquired, they will be displaced. Is it correct that at that point the village had contractually committed to acquire that property? Correct, through the developer's agreement. Sounds like a final decision to me. You're pretty committed, aren't you? Not necessarily, because this land was acquired for purposes of road widening through a separate contract with the Department of Transportation, which is not part of the record. But I thought you told me that the developer's agreement required the acquisition of these plaintiff's properties. Of some acreages, including these plaintiff's properties, correct. So why does the separate contract with the highway department change anything? Because under that contract, we had to, we were obligated to do certain things, but it was not a final decision by the village as to how they were going to do it or what they were going to do in terms of the overall scheme for road widening and public use as well. When do you think there was a final decision regarding the Jensen's property? When the jurisdictional offer was issued by the village of Mount Pleasant to the Jensen's property in August of 2018, or July 31st of 2018. And? That triggered statutory remedies that the Hellens have under Wisconsin law, which include the right to challenge the taking of the property under Wisconsin Statute 3205 and the right to seek just compensation for the taking. Okay, well this question of a final decision sounds kind of tricky to me. If the village had already decided to do so, and had committed a huge development agreement to do so. Sure, but there is the concept of force majeure, meaning if we cannot do it and it is an impossibility for us to acquire the properties that we were required to under the development agreement, there would be a way to terminate that development agreement. Okay, so if I could ask, given that the property has now been taken, if we were to reconsider our precedence on the scope of Williamson County, why not just send this back to the district court? I would suggest that based on the precedent in this circuit, including Aronsfield, Forsyth, and Covington, this court has consistently held that state court remedies are sufficient to... That's not my question. Suppose we were to take a fresh look at those since we seem to be all alone. Do you agree we're all alone on this question? From my research, yes, your honor. Okay, and do you see any sign of floodgates having opened in other circuits? Like my counsel, no, your honor. Okay. And I think, if I may, the reason behind that is Wisconsin has a very specific statutory mechanism for plaintiffs to challenge those takings. If, in fact, we were to take this property for not a public use, 3205 is a right to take challenge, as I mentioned earlier, which fast-tracks those cases in front of a trier, a fact, a judge, and who will determine whether the village properly took the property or they improperly took the property. If the answer is they improperly did, the property is returned and plaintiffs can seek remedies. But if it is taken properly, they have the right to just compensation as well. So there is a clear mechanism in place to protect the rights of property owners in Wisconsin. So if the plaintiffs are right and Williamson County survives its current challenge that will be argued tomorrow in the Supreme Court, assuming no new snowstorms in Washington, then it seems to me there would be some risk, and Mr. Olson, I'd be interested in your thoughts on this as well, some risk of basically kind of splitting the case. That is, if just compensation issues are left under Williamson County to the state courts but the public use can be litigated first in federal court, that seems like a fairly messy prospect, although we sometimes face messy prospects. You're right, Your Honor, and that's the concern that other courts have held as well. In Williamson and in Rosemary Nick, the oral argument that was held in October, I think, I forgot which justice exactly, commented on that very point about how we're opening the floodgates for a purview of area of litigation that has consistently been in the state courts to handle and to manage. And the concept of inconsistent results and confusion was raised in the prior oral argument in the Supreme Court. The other issue is this concept of the Fifth Amendment due process. The Fifth Amendment, as you know, says you have the right to take your property, you have the right for a claim without just compensation. You cannot take the property without just compensation. Here, there has been a process and a mechanism in place for Wisconsin to take the property and provide just compensation. So you don't get to a federal due process question. But how does our position extending Williamson County to public use issues actually fit within the rationale of Williamson County? Because I understood the Williamson County analysis to be there's no constitutional violation until there's a denial of compensation. Correct. But it's not an exhaustion requirement. It's just the claim's not ripe until then. But if the government wants to take your property for a private use, that's a violation whether there's compensation available later or not, correct? Yes, but in this case, that's not what has been alleged by the plaintiffs. In their complaint, they've alleged their property is being taken for road widening and highway expansion. So under their own complaint, they've agreed it's a public use. There's some disagreement about the scope of that. Let's assume that they've properly alleged a taking for a private use. What would be wrong with us reconsidering and sparing the Supreme Court the trouble of resolving that circuit split? Well, again, I think that brings Wisconsin Statute 3205 into play and consideration by the federal court because there is a mechanism in state court to handle such exact arguments that you've just made. Well, there has to be in every state, right? So that doesn't really explain why every other circuit that's looked at this has come to the opposite conclusion. I don't know the answer in terms of how other circuits have handled that. Well, they've said in essence what I said a moment ago. The violation is complete upon taking. It can't be – there's nothing more that has to happen. Correct. And there's no requirement under 1983 to exhaust state court remedies. Yes, and I agree, but this is not the case to readdress Williamson. This is a case that was based on a lack of a final decision, and you don't even get to the Williamson analysis under the four corners of the complaint analysis done by the Eastern District. I'm not saying the Seventh Circuit should not reconsider its position on Williamson and the prior case law for Sessom-Covington, but I submit that this is not the case to do that given the complaint and the dismissal without prejudice, which would allow plaintiffs or appellants to refile if subsequent acts had occurred. Do they still have time to do that? I believe that they would in federal court and perhaps. . . Or state court. The record does not have this, but they certainly have availed themselves of state court remedies available to them. There's separate litigation? Yes, Your Honor. Between the Jensen's and the Village? Correct. There's a state court action right to take that he filed in August. What's going on with that? I'm sorry, say it again. What's happening with that? It is set for a trial on February 18th and 19th in Racine County. On the issue of a public versus private use? On the issue of whether the Village of Mount Pleasant had the right to take the Jensen's property, correct? Under 3205. What's the issue? Whether there's a proper taking? Correct. And if there was not a proper taking, they get the property back. If Racine Court determines there was, they're entitled to just compensation under 3209, and there's a process to follow for that too. So he did avail himself of both state court and federal court procedures. That's wise, I have to say, given our precedent. But that's the exact confusion that could occur if Williamson, if Forsyth and Covington are reconsidered, and Williamson is reconsidered by this court, you'd have concurrent state court and federal court litigation on the exact same issue. I believe my time is up. So as of the following, I want to just quickly conclude. For the reasons set forth in our briefs, and I've stated on the record, I submit that the Court of Appeals uphold the District Court of Wisconsin's dismissal of the appellant's complaint. Thank you for your time. Mr. Olson, is his time expired? Your time has expired, but we've asked you a fair number of questions, so you may have an additional two minutes. I would just like to add that although it is not in the record, it got brought up, the state court action had to be filed within a very short time after the jurisdictional offer, which is one of the appendices to our reply brief was issued. That's a 40-day deadline. And San Remo Hotel suggests that just, and a couple of other cases, which escaped me right now, that just letting a deadline lapse is not excusable. So we filed that case. There was some confusion with that court about consolidation of cases, and I have on file a request to preserve and hold the public use issue, which is the only issue that was preserved here, and decide other corollary issues if the court would like to do that. And that court said it was not interested in staying anything, it was going to move ahead on those. So I expect that that case will not decide any public use issues, and I unfortunately under the precedent, I felt that I had to do that to preserve my client's rights. San Remo is a confusing case, as is the precedent. Any other questions, I would be happy to field, but that's it. Okay. All right, thanks to both counsel.